## Keyes v. Bradley.

1. **Agency:** FRAUD ON PRINCIPAL: EVIDENCE OF OTHER LIKE FRAUD. Plaintiff's action is based on the averments that defendant was his agent to buy certain mining stock, and that he in fact bought it at 6¼ cents per share, but represented to plaintiff that he had paid 50 cents per share therefor, and thus fraudulently obtained the difference from plaintiff. *Held*, on the trial of this issue, that evidence of a similar fraud practiced by defendant on another person in relation to the stock of the same company was not admissible for the purpose of showing defendant's fraudulent intent, for, if he was plaintiff's agent, it was immaterial what his motive was; but that it was admissible so far as it went to show what he had paid for the stock.

2. ——:ˈ PURCHASE OF STOCKS: PROFITS BELONG TO PRINCIPAL. While an agent to purchase mining stocks for his principal is not bound to deliver to him any stocks except such as he has purchased for him as agent, yet, if he makes purchases as agent, he cannot hold the stocks so purchased as his own, and transfer to his principal other stocks owned by him, at a greater price than he paid for those purchased as agent, and thus make a profit out of his principal; and where such a transaction has been attempted, the principal may recover back the profit.

*Appeal from Linn District Court*—HON. J. H. PRESTON, Judge.

TUESDAY, DECEMBER 20.

THIS is an action for the recovery of a sum of money obtained by defendant from plaintiff by a false representation, as is alleged, as to the price which he had paid for certain shares of mining stock which he had purchased for plaintiff while acting as his agent. There was a verdict and judgment for defendant, and plaintiff appeals.

*Henry Rickel*, for appellant.

*Mills & Keeler*, for appellee.

REED, J.—The petition charges, in substance, that plaintiff employed or engaged defendant as his agent to purchase for him 3,000 shares of the stock of the Golden Summit Consolidated Gold Mining Company; that afterwards defendant purchased and delivered to him 3,000 shares of the stock of said company, representing to him that he had paid 50 cents per share therefor, which amount plaintiff thereupon paid him, but that in truth defendant had not paid more than $6\frac{1}{4}$ cents per share for said stock. The answer admits that at the time alleged defendant delivered to plaintiff 3,000 shares of the stock of said company, but denies that the relation of principal and agent existed between the parties, or that defendant was acting for plaintiff when he purchased the stock, and alleges that the transaction was a sale by defendant to plaintiff of said shares of stock at the price of 50 cents per share. For some time before the transaction

in question, defendant had been a stockholder in the com-
pany. The parties were neighbors, and in June or July,
1883, there was a conversation between them with reference
to the stock. In that conversation defendant stated that he
did not desire to dispose of any of the stock held by him,
but that he knew of a party who held a large amount of the
stock, which he would be compelled to sell; that the party
lived in Dakota territory, where the mine belonging to the
company is situated, and that he (defendant) was going there
in a short time. Plaintiff testified that, in that conversation,
defendant agreed to purchase some of the stock for him; but
defendant's testimony was to the effect that his agreement
was that he would make an effort to purchase the stock from
the party in Dakota, and that, if he succeeded in doing so,
he would sell a portion of it to plaintiff. Soon after the con-
versation, defendant went to Dakota, and while there he pur-
chased from one Wardner 12,000 shares of the stock. On
his return to this state he delivered certificates for 3,000
shares to plaintiff, who paid him $1,500 therefor. While in
Dakota, he surrendered the certificates he received from
Wardner, as well as those formerly held by him, to the sec-
retary of the company, and received new certificates in lieu
thereof, and it is uncertain whether the certificates which he
delivered to plaintiff represent any of the stock purchased
from Wardner. While defendant was in Dakota, plaintiff
telegraphed to him, instructing him to purchase 3,000 shares
of the stock for him, but the dispatch was not received by
defendant until after his return to Iowa, and after the trans-
action was closed, when it reached him through the mail.

I. Plaintiff introduced as a witness one P. H. French,
who testified that he and defendant entered into an agree-
ment, before the latter went to Dakota, whereby
it was agreed that defendant, in case he should
be able to purchase any additional stock, would
sell the same, or a portion of it, to the witness,
at the same price at which he should purchase it, the witness

1. AGENCY:
fraud on
principal:
evidence of
other like
fraud.

agreeing to pay his traveling expenses to Dakota, and that upon his return to Iowa he delivered to the witness 6,000 shares of the stock, representing that he had purchased it at 25 cents per share, which price the witness paid him for it. Plaintiff then offered to prove by the witness that he subsequently heard that defendant had purchased the stock at less than 25 cents per share, that he thereupon asserted a claim against him on account of his misrepresentation as to the price he had paid for it, and that defendant paid him $300 in satisfaction of the claim; but the court excluded the evidence on the ground of irrelevancy and immateriality. Counsel for appellant contends that the evidence was admissible to prove a fraudulent intent on the part of the defendant in the transaction. His position is that, when fraud is the *gravamen* of the action, proof of other acts similar to those charged and done at about the same time is admissible to show the intent with which the party acted in the transaction. When it is material to inquire as to the motive or intent with which an act has been done, it may be conceded that the rule is as claimed by counsel; but in the present case the motive which prompted defendant's conduct is not material. If the facts were as claimed by plaintiff, viz., that defendant was acting as his agent when he purchased the stock, and that he misrepresented the price at which he bought it, he is liable, whatever the motive may have been. We are of the opinion, however, that the evidence was admissible on another ground. Under the issue it was material for plaintiff to show the price at which defendant bought the stock from Wardner. The excluded evidence would have tended to prove that fact. Defendant's act in paying the amount demanded by French was in effect an admission that he had paid not to exceed 20 cents per share for the stock. It is contended, however, that the verdict necessarily determines that defendant was not acting as the agent of plaintiff when he purchased the stock, and, with that fact determined, the exclusion of the evidence, which

related merely to the measure of plaintiff's recovery in case his right to recover had been established, was not prejudicial. Whether the verdict does necessarily determine that the relation of principal and agent did not exist between the parties depends upon matters which we will consider in the next division of the opinion.

II. The district court instructed the jury that, unless plaintiff had proved that defendant was acting as his agent

**2. ———: purchase of stocks: profits belong to principal.** when he purchased the 3,000 shares of stock in question, he could not recover. Another instruction given by the court is as follows: "If you find from the evidence that the defendant was, by agreement with the plaintiff, to act as agent for the plaintiff in purchasing mining stock held by other parties, then the defendant was required to deliver, under his agency, to the plaintiff, only such mining stock as the defendant should purchase for the plaintiff after said agreement between plaintiff and defendant." And, at the request of defendant's counsel, the following instruction was given: "If the jury should find from the evidence that the Keyes shares of stock in controversy were not a part of the stock bought by defendant from Wardner, but were part of other stock owned by Bradley, then they will disregard all the evidence of the witness Dr. French as to transactions and conversations between himself and Bradley, and not consider the same in making up their verdict." The testimony of the witness French, it will be borne in mind, established that defendant represented when he returned from Dakota that he had purchased the stock from Wardner at 25 cents per share. Defendant was also permitted, against plaintiff's objection, to testify that, before going to Dakota, he purchased 4,000 shares from Charles O'Harra, for which he paid 50 cents per share. The jury would understand from the ruling admitting that evidence, and from the instruction given, that plaintiff was entitled to recover only in case he had proven that the particular 3,000 shares which defendant delivered to him were

purchased under the agency, and that he was not entitled to recover, even if he had proven the agency, and that the purchase from Wardner was made by defendant as agent, if the shares delivered were not part of that purchase.   It is very clear, then, that the verdict does not necessarily determine that the relation of principal and agent was not created between the parties, and the exclusion of the evidence of the witness French may have been prejudicial.   We are clear, also, that the theory of the court is erroneous.   It is true, as the court told the jury, that defendant was bound to deliver to plaintiff only such shares as he had purchased under the agency; but, if he accepted the agency, and made the purchase from Wardner in that capacity, while he was not bound to deliver to plaintiff any shares except those so purchased, still, if he did deliver others, he was bound to deliver them at the price which he paid for those he purchased while acting as plaintiff's agent.   He was bound to act in good faith with his principal.   The principal was entitled to whatever benefits accrued under the purchase by the agent.   The delivery to him of shares not acquired by that particular purchase would not, perhaps, have afforded him any ground of complaint; but he was entitled to have them delivered at the price paid for those purchased in that transaction.

REVERSED.