I. F. WIGGINS, Appellee, v. F. M. MARKHAM, Appellant.

**Partnership contract:** ACCOUNTING: PERSONAL EXPENSES. On an
1  issue between partners engaged in the real estate business on
   . commission, for an accounting, it is held that by the partner-
   ship agreement each was to bear his own personal expenses.

**Burden of proof.** Where a real estate broker's partnership con-
2  tract contemplated only a commission business, the burden is
   upon the one claiming a contribution from the other for money
   which he invested in land and lost, to show that the transac-
   tion was authorized or ratified.

**Partners:** GOOD FAITH. Each member of a partnership must exer-
3  cise the utmost good faith toward the other.

**Partnership:** ACCOUNTING. Where one member of a partnership,
4  engaged in selling land on commission, made a sale for the firm
   and thereafter personally procured a cancellation of the con-
   tract and sold the same purchaser land of his own, he should
   be held to account to his partner for such sum as he would
   have profited by the original sale.

*Appeal from Mitchell District Court.*— HON. J. F. CLYDE,
Judge.

. WEDNESDAY, JUNE 13, 1906.

SUIT in equity for a partnership accounting. Decree
and judgment for plaintiff, and defendant appeals.— *Af-
firmed.*

*Salisbury & Graves* and *Mears & Lovejoy,* for appel-
lant.

*Eaton & Salisbury,* for appellee.

DEEMER, J.— In the year 1902 plaintiff and defend-
ant formed a partnership for the purpose of engaging in the
real estate business, handling lands in North and South Da-
kota and in eastern Montana. For a time the business was

conducted in the name of "Markham & Wiggins," but latterly as the "Osage & Western Land Company." Before the partnership was formed each of the parties had been engaged in the real estate business on his own behalf; and appellant had theretofore made arrangements with parties in North and South Dakota whereby he' was to receive a commission of $2 per acre upon all land for which he should find customers who would take and pay for lands in those states, provided the price at which the lands were sold would warrant it. With other persons he had arrangements for a commission of $1 per acre for finding purchasers. Appellee also had arrangements of a similar character with other parties when the partnership was formed. There is a dispute regarding the nature of the partnership agreement; appellant contending that the parties were to work together and divide results, that nothing was said as to how the expenses were to be divided, but that each was to have one-half the profits. Of course, if nothing was said about expenses, the law would infer an agreement that each was to bear one-half thereof. Appellee contends, however, that the agreement was that each should give his entire time to the work, and that each should pay his own personal expenses. Whatever the truth here, it does appear that they divided up the territory; appellee taking the state of North Dakota, and appellant South Dakota.

During the year 1902 each of the parties made sales of real estate and earned commissions to which we shall presently refer. During the year appellant and one Jordon purchased under contract 13 sections of land in eastern Montana, and within a short time they took in five other persons, including appellee, with them; each of the five receiving one-thirteenth of the Montana land, and appellant and Jordon each retaining four-thirteenths. Four of these owners, including plaintiff, joined in a written agreement whereby they gave the partnership between plaintiff and defendant authority to sell the Montana land in not less than section tracts at

the rate of $4.50 per acre net to the owners, and also agreed to pay for advertising the land. While this was not signed by all the owners, it was agreed to by all of them; and such title as they had was conveyed to Markham for the purpose of facilitating sales. After the change in the name of the partnership it undertook to locate homesteaders upon government land, charging each applicant $25 for its services. The land company appointed various subagents for the location of homesteads and the sale of the Montana land, agreeing to pay them various amounts for their services. Each of the partners went to work to carry out his agreement with the partnership and with his copartner, each received commissions, and each went to considerable expense, as both were traveling over the country finding purchasers and showing them the lands. Each of the parties also made advancements for the partnership, and at the time of trial plaintiff held a note against defendant, which was brought into this accounting, for $1,000. Defendant also held a note against plaintiff for about $600, which was also exhibited as a part of the accounting.

Some of the Montana land was sold by defendant to one Kittleson; the first contract being confessedly on partnership account. But it is claimed that this was abandoned, and another contract between these parties was also made, and, according to appellant's contention, abandoned. By this contract appellant undertook to sell to Kittleson an undivided one-half of his undivided four-thirteenths interest in the land. Defendant received from Kittleson, the purchaser, $1,600 in cash under the first contract; and it is claimed by him that, when the second contract was made, this payment was transferred to it as so much paid, and that when the second contract was canceled he executed his note to Kittleson for the sum of $1,700 to cover the amount of the cash payment received by him. There is a claim by appellant that he advanced some money, to wit, $500, for the partner-

ship, in the purchase of some land, which was forfeited by reason of failure to complete the purchase.

This suit is for an accounting as to all of these, as well as some other matters; and defendant also presented an expense account amounting in the aggregate to something over $1,900. Plaintiff did not originally claim anything on account of expenses; but, when defendant presented his account, he (plaintiff) also presented one. The appeal presents the following primary questions: (1) Should either party be allowed anything for his personal expenses? (2) How stands the account for commissions earned on sales of North and South Dakota lands? (3) Should appellee bear any part of the loss incident to the transaction resulting in the forfeiture of the $500? (4) What does either owe the other on account of homestead locations? (5) Is appellee entitled to anything on account of the Kittleson sale? Various items of legitimate expense are admitted; but there is a controversy over some minor matters, and also a claim by plaintiff that defendant was guilty of fraud and deceit and endeavored to profit himself at the expense of the firm. These are nearly all questions of fact, and we cannot be expected to do more than state our conclusions about them in the most general way. The fraud issue involves both law and fact, and we shall dispose of that in order. Before going further into the case it may be well to state that the trial court gave plaintiff judgment for the sum of $610.

We shall first take up the matter of personal expenses. The weight of the testimony shows, we think, that each party was to pay his own railway fare, hotel bills, and traveling expenses, and that none of these matters should be charged to the firm. It was thought that each would have to pay out about the same amount, and that the arrangement would save trouble in keeping accounts; and it also appeared that each had personal matters to look after, and it was thought best to take no account of personal expenses. Office expenses, advertis-

1. PARTNERSHIP CONTRACT: accounting: personal expenses.

ing, and actual expenses in making land sales were to be borne by the firm; and there is in the record a statement as to what each paid out on these accounts. Personal expenses should not be considered upon this accounting.

II. As to commissions on Dakota land sales there is a very decided and square conflict in the evidence as to what defendant received on this account; and the same may be said as to the amount earned by each partner on account of homestead locations. As to these matters, more hereafter. With reference to defendant's claim for the $500 forfeited, it does not appear that such business was originally contemplated by the partners, and it was for defendant to show that plaintiff either authorized or ratified this transaction before he can be held liable for any part of the loss. Upon this issue defendant has failed, as the preponderance of the testimony is against him. There are certain admitted items represented by notes from one to the other, payments made for taxes, and money loaned. Taking these alone, defendant owes the partnership about $600, one-half of which belongs to plaintiff individually. There is one item here in dispute, and that is for money which it is claimed plaintiff loaned defendant. Plaintiff says that this was from his own funds, while defendant says that it was from partnership money paid out for partnership expenses. This is a small item of about $60, and does not affect the account one way or the other to an extent greater than $30. As to the legitimate expense account, defendant paid out something like $222 more than the plaintiff, which makes plaintiff's liability on this account practically $110. So far, then, defendant would owe plaintiff about $200. Plaintiff received something like $1,100 by way of commissions on Dakota lands and for locating homesteaders. The amount received by defendant is in sharp dispute. We are satisfied, however, that he received from commissions for land sales as much, if not more than plaintiff did.

As to homestead locations there is another dispute re-

2 Burden of Proof.

garding the amount defendant received. We think the evidence shows that he received on this account something like **3. PARTNERS: good faith.** $475. This makes defendant's indebtedness to plaintiff, excluding the Kittleson deal, approximately $450. Indeed, were there no more to the case than this, we should be disposed to affirm it, because of the loose and unsatisfactory manner in which defendant kept his books and accounts and the character of his testimony while on the witness stand. He owed his partner the strictest good faith, and as an agent of the firm was under obligation to keep an accurate account of the moneys which passed through his hands. *Uberrima fides* is the rule which applies to agents, partners, and trustees. *Levi v. Karrick,* 13 Iowa, 334; *Keyes v. Bradley,* 73 Iowa, 589.

Coming, now, to the Kittleson sale, this transaction is peculiar, to say the least. Defendant entered into a contract with him to sell a section and one-half of the Montana **4. PARTNERSHIP: accounting.** land at the agreed price of $6.25 per acre; $1,600 to be paid in cash on or before January 1, 1904, and the remainder in yearly installments. This contract was made in the name of Markham, although as to this sale it is admitted that he was acting as agent for the owners and as a representative of his firm. A subagent had been appointed to assist in the sale of this land, and he was paid $100 for his services by defendant, Markham. Kittleson thought Markham was the owner of the land. Six hundred dollars of the $1,600 was paid by Kittleson to Markham, and Markham used it in his business. About the 1st day of May, 1904, this contract was, it is claimed, abandoned; and, whatever the fact, it does appear that on that day Markham made a new contract with Kittleson whereby he undertook to sell him (Kittleson) the undivided one-half of his four-thirteenths interest in all the 13 sections of Montana land at the rate of $5.25 per acre; and it was agreed that the $600 already paid and the agreement to pay the other $1,000 on May 1st should stand as so much on the new

contract. Pursuant to that agreement Kittleson paid the defendant the $1,000 about May 5th. This was a profitable shift for defendant, for thereby he would be able to take all profits to himself, rather than share them with another or others. It is further claimed that this second contract has also been abrogated, and that defendant has returned, or promised to return, all money he received from Kittleson. This, of course, does not materially affect our present inquiry. Defendant says he secured the abrogation of the first contract because he had gone beyond his authority in making the sale. But Kittleson says that the reason why he consented to the change was because he was getting the land at the rate of $1 per acre less than he had originally agreed to pay; that defendant did not say the first contract could not be carried out, but that he made the change simply because of the profit to him of $1 per acre. Defendant never reported his doings to the owners of the land; and neither they nor this defendant's partner, as we believe, had a chance to, nor did they or either of them, complain of or refuse to abide by the original sale. At no time did they repudiate it, nor did they authorize defendant to cancel it for them. Defendant said, on the witness stand, that the first contract was thrown up because of litigation between him and Jordon. But that cannot be so. See *Jordon v. Markham,* 130 Iowa, 546. Taking the evidence as a whole, we think it shows that the first contract was abandoned at defendant's sole request, in order that he might dispose of his own land, and that Kittleson agreed to it, because he would save $1 per acre in the purchase price. It was not canceled for fraud, want of authority, or any other reasons than those stated.

It is claimed that plaintiff consented to it; but we do not think he did so. There is absolutely no good reason shown for abandoning the first sale; and we do not think defendant had authority to do so under this record. There being no good reason shown, we must seek out the reason from inference. When this is done, it is not hard to discover

the purposes which actuated the defendant. His duty was primarily to his partner, and to his principals, who had placed the land in his hands for sale, and he could not use his position for his own profit. To the extent, then, that he and his partner would have profited from the original contract of sale, had it been carried out, defendant must be held liable, and should be charged on this accounting. In any event, we have already given him credit for the $100 paid the subagent in making the Kittleson sale, and, if defendant is not entitled to credit therefor, it adds that much to the amount heretofore found due. Unless the sale was made to Kittleson, defendant had no authority, so far as shown, to take from partnership funds any money to pay a subagent for negotiating the sale. If the sale was made, and defendant and his partner were entitled to receive a commission therefor, then he is entitled to the credit, but should be charged with the commission. Moreover, after the commission was earned, defendant could not voluntarily relinquish it at the expense of his partner. Defendant had no authority to cancel the first contract of his own volition. *Luke v. Grigg,* 4 Dak. 287, (30 N. W. 170). Counting in the commissions on this deal, and the profits growing out thereof, it is manifest that plaintiff did not receive all he was entitled to in the judgment rendered by the trial court. But, as he does not appeal, we cannot disturb the judgment in his favor.

Looking, then, at the case from almost any standpoint, it appears that defendant has no cause for complaint of the decree and judgment rendered by the trial court; and it is therefore *affirmed.*